IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHANNON OLSCHEFSKI,                    :

        **Plaintiff**          :          **CIVIL NO. 1:12-CV-871**

        **v.**                 :

RED LION AREA SCHOOL                   :          **JUDGE SYLVIA H. RAMBO**
DISTRICT;
TROY FISHER, Individually;             :
TODD MCCLIMANS, Individually,          :

        **Defendants**         :

## M E M O R A N D U M

In this employment discrimination action filed by a former teacher
employed by the Red Lion Area School District, Plaintiff alleges that the individual
Defendants, each of whom qualify as "employers" as defined by the Family Medical
Leave Act ("FMLA"),[1] discriminated against her because of her disability and
denied her reasonable accommodations in violation of the Rehabilitation Act[2]
(Counts III, IV), retaliated against her in violation of the Rehabilitation Act and
FMLA (Counts V, VII), and otherwise interfered with rights granted and protected
by the Rehabilitation Act and FMLA (Counts II, VI). Plaintiff further alleges that
Red Lion Area School District is directly liable, or otherwise liable through
respondeat superior, for the acts or omissions of the individual Defendants.
Presently before the court is Defendants' motion to dismiss (Doc. 20), wherein
Defendants contend that (1) respondeat superior is not an independent cause of
action; (2) Plaintiff has failed to state a claim for which relief can be granted for

---

[1] Family Medical Leave Act of 1993, §§ 2 *et seq.*, 29 U.S.C. §§ 2601, *et seq.*

[2] Rehabilitation Act of 1973, §§ 2 *et seq.*, 29 U.S.C. §§ 701, *et seq.*

alleged violations of the Rehabilitation Act against the individual Defendants; and (3) the individual Defendants are entitled to qualified immunity for the alleged violations of the FMLA. For the reasons that follow, the motion will be granted in part and denied in part.

## I.      **Background**

In accordance with the standard of review for a motion to dismiss, the court will present the relevant allegations of the complaint, which it will assume to be true solely for the purpose of this motion. The statements contained herein reflect neither the findings of fact nor the opinion of the court as to the veracity of Plaintiff's allegations.

### A.      **Facts**

Plaintiff, Shannon Olschefski, began employment with Defendant Red Lion Area School District[3] ("Defendant School District") in 2006 as a first grade teacher at Clearview Elementary School. (Doc. 15, Am. Compl., ¶ 8.) During the period of Plaintiff's employment, Defendant Troy Fisher ("Defendant Fisher") was employed by Defendant School District as the Director of Human Resources (*Id.*, ¶ 3), and Defendant Todd McClimans ("Defendant McClimans") was employed by Defendant School District as the Principal of the Clearview Elementary School (*Id.*,

---

[3] Plaintiff avers that, at all relevant times to the instant matter, Defendant School District employed at least four persons (Doc. 15, ¶ 6) and was a recipient of federal funds "through funded reading programs, special education[,] and nutrition programs sponsored by, *inter alia*, the American Recovery and Reinvestment Act of 2009, other Federal Stimulus funds, and federal resources from which the Pennsylvania Department of Education advises the School District to use the money for additional nonrecurring expenses like purchasing equipment, teaching resources like books, and software." (*Id.*, ¶ 7.) Defendants do not raise a factual challenge on these points, and therefore, the applicability of the FMLA and Rehabilitation Act to Defendant School District need not be addressed for purposes of the instant motion.

¶ 4) (collectively "Individual Defendants"). Plaintiff avers that the Individual Defendants actively supervised Plaintiff and made material decisions about her performance and discipline, and are, therefore, considered employers within the definition of the FMLA.[4] (*Id.*, ¶¶ 3, 4.)

Plaintiff suffers from Chron's disease, and experiences severe symptoms in the form of "urgent diarrhea," the onset of which can be with "little notice." (*Id.* at Ex. 6.) The "mini-flares" may start between 5:00 a.m. and 8:00 a.m., and, according to Plaintiff's health care provider, can occur once or twice per week. (*Id.*) The sudden onset of symptoms causes Plaintiff to be unable to keep the typical hours of a first grade teacher as required by her employer. (*See* Doc. 15, ¶¶ 15-16.) Defendants do not challenge whether Chron's disease qualifies as a disability.

Although Plaintiff alleges that she has suffered from Chron's disease since 2008 (*Id.*, ¶ 10) and that Defendant School District has a record of the same (*Id.*, ¶ 11),[5] Plaintiff first requested an accommodation for her condition in March,

---

[4] The Individual Defendants do not raise a factual challenge to their "employer" status within the definition of the FMLA as alleged in Plaintiff's complaint.

[5] Plaintiff accompanies her averment that "[t]he School District had a record of [her] aforementioned disabilities from 2008 to the present" with a citation to Exhibits 3 and 4. (Doc. 15, ¶ 10.) A review of the amended complaint indicates that there is no Exhibit 3 filed of record. Exhibit 4 is twelve separate pages, many of which appear in other exhibits. (*Id.* at Ex. 4, p. 1-12). The court is unable to interpret any page in Exhibit 4 as supporting the averment that Defendant School District had a record of the disabilities since 2008. In fact, the only document that appears to have been created in 2008 is a letter addressed to "Dr. Herron" that Plaintiff authored on May 5, 2008. (*Id.* at Ex. 4, p. 12). The substance of the document provides, in its entirety, as follows:

> I am writing this letter to request sick leave without pay on the dates
> listed below:
> 4/08/08
> 4/28/08
> 4/29/08
> 5/1/08

(continued...)

3

2011. (*Id.*, ¶ 14; *see id.* at Ex. 5). A letter authored by Defendant Fisher, dated March 30, 2011, memorialized Plaintiff's request and provided, in its entirety, as follows:

> As a result of our conversation last week and your subsequent request for an accommodation, I need to gather a little more information.
>
> As I mentioned to you, I had no knowledge of your condition, nor do we have any doctor's notes detailing your condition and subsequent limitations it places on you. Therefore, I think the best place to start is for us to gather detailed information so that we can make a determination as to the extent of your condition, and if it is truly covered by the Americans with Disabilities Act. If so, then we will need to discuss the possible accommodations available to us.
>
> I have attached a copy of the Federal FMLA form. I would like you to have your treating physician complete this [form] as it covers all of the questions that will be necessary to help us make a determination. Please print this form out, and take it to your physician for completion. He/She should be familiar with this form, as this is a federal form.
>
> Please forward this form to my attention after it has been completed. Once we get this information, we can give proper consideration to your request. Thank you in advance for your cooperation.

---

(...continued)

> 5/2/08
>
> During this time, I was *experiencing a sickness that needed urgent medical care*. I have handed in doctor's notices for each of these dates above.
>
> Thank you for your consideration on this matter.

*(Id.* at Ex. 4, p. 12) (emphasis supplied). Although the document may evidence Defendant School District's knowledge that Plaintiff experienced a sickness that needed urgent medical care, it does not appear to support Plaintiff's contention that Defendant School District was aware of her chronic *disabilities* in 2008. The court will nevertheless accept as true all well-pleaded factual averments for purposes of addressing the instant motion to dismiss.

(Doc. 15 at Ex. 5.)  As referenced in the letter, Defendant Fisher provided Plaintiff with the FMLA forms in the end of March, 2011.  (Doc. 15, ¶ 21.)  Plaintiff returned the completed forms to Defendant Fisher in May, 2011.  (*Id.*, ¶ 23; *see id.* at Ex. 9.)  Thereafter, Defendant Fisher and Ms. LeGore, a principal at Clearview Elementary School (*see* Doc. 15, ¶ 9), acknowledged Plaintiff's request, but did not address the applicability of the FMLA during the remainder of May, 2011 (*see id.*, ¶ 24).[6]

In early June, 2011, Plaintiff met with Defendant Fisher regarding her requests for an accommodation.  (*Id.*, ¶ 25.)  Although he did not take action to accommodate Plaintiff at that time, he suggested that he and Plaintiff revisit the issue once the following school year began.  (*Id.*)  Plaintiff agreed to revisit the issue and continued to provide additional reports from her physicians during the summer.  (*Id.*, ¶ 26.)

Despite the understanding that Plaintiff's request would be revisited, no meeting on the subject was held at that time.  (*Id.*, ¶¶ 28-30.)  The 2011/2012 school year commenced without any change to Plaintiff's job requirements or conditions, which caused Plaintiff's condition to "rapidly deteriorate" due to increased anxiety.  (*See id.*, ¶ 33.)

During the fall of 2011, Plaintiff received, for the first time, an unsatisfactory rating as an educator which she contends was unwarranted and was a

---

[6] In her Amended Complaint, Plaintiff avers that, although Defendant Fisher communicated with her regarding "both her FMLA and her disability accommodation requests" (Doc. 15, ¶ 24), neither Defendant School District nor Defendant Fisher "ever communicated any further information regarding . . . Plaintiff's request for FMLA at that time, or at any time before the end of the school year 2010/2011" (*Id.*).  The following averment states that, in early June, 2011, Defendant Fisher met with Plaintiff regarding her requests for accommodation.  (*Id.*, ¶ 25).  When taken together, the court understands these two averments to indicate that neither Defendant School District nor Defendant Fisher, individually, communicated further information regarding Plaintiff's request during the remainder of May, 2011.

result of her insisting that she receive accommodations and leave under the FMLA. (*Id.*, ¶ 68.) Furthermore, Plaintiff was subjected to unwarranted discipline in connection with "alleged unprofessional actions in her classroom." (*See generally id.*, ¶¶ 34-38.) Plaintiff's disability and outstanding requests for accommodations were broached at a disciplinary meeting held on November 16, 2011, the purpose of which was entirely unrelated to disability. (*Id.*, ¶¶ 31, 32.) Specifically, Defendant Fisher remarked that Plaintiff needed to arrive to work on time and that arriving late was not a reasonable accommodation, demanded that Plaintiff "clean up" her attendance issues, and questioned why Plaintiff could not simply "wake up earlier." (*Id.*, ¶ 31.) Defendant McClimans inquired whether the stress associated with being a classroom teacher was too great for Plaintiff. (*Id.*, ¶ 32.) The disciplinary meeting resulted in Plaintiff being suspended. (*Id.*, ¶ 38.)

Plaintiff alleges that the school district improperly imposed the suspension based upon a discriminatory motive. (*Id.*, ¶ 41.) Specifically, although the suspension was originally deferred for a day in order to permit Plaintiff to attend a high profile program important to her position (*Id.*, ¶ 40), Defendant School District "arbitrarily" reneged on the deferral and enforced the sanction on the date of the program, which resulted in Plaintiff suffering humiliation and being ostracized from her colleagues, students, and the parents of her students. (*Id.*, ¶ 41)

In late 2011, Plaintiff made a third attempt to request an accommodation for her disability and a determination as to her FMLA eligibility. (*Id.*, ¶ 43.) Following a demand letter sent to the school by her attorney (*Id.*, ¶ 46), Defendant School District granted Plaintiff accommodations for her disability (*see id.*, ¶¶ 46-48), but did not address Plaintiff's request to exercise her rights under the

FMLA, although Plaintiff did receive, for a second time, the FMLA paperwork with directions to have her physician complete the forms again (*Id.*, ¶ 50). In terms of accommodations regarding Plaintiff's suffering from morning "flare ups," Defendant School District permitted Plaintiff to inform the school of her condition outside the normal reporting requirements ("Early Morning Accommodation"), although Defendant School District required Plaintiff to "make up the [missed] time in the afternoon."[7] (*Id.*, ¶ 47.) Regarding Plaintiff's suffering from a sudden onset of Chron's disease-related symptoms, Defendant School District relocated Plaintiff to a classroom with access to a nearby restroom. (*Id.*, ¶ 48.) In her amended complaint, Plaintiff contends that the aforementioned accommodations were intended to ostracize her from other teachers, and stemmed from hostility based upon false allegations of an altercation between herself and a student and her repeated attempts to exercise her rights under the FMLA. (*Id.*, ¶ 49.)

Despite granting the Early Morning Accommodation, Defendant School District continued to insist that Plaintiff arrive to work on time, criticized Plaintiff when she exercised her Early Morning Accommodations, and continued to discipline Plaintiff for "late arrivals, tardiness, and absences." (*Id.*, ¶¶ 54-55.) Additionally, the Individual Defendants disseminated information to third parties regarding Plaintiff's health conditions and absences. (*Id.*, ¶ 56.) As a result, several teachers and school staff members informed Plaintiff about their knowledge on the subject. (*Id.*, ¶ 57.) Plaintiff once again submitted completed FMLA forms as requested by Defendant School District, although she was never given notice of her

---

[7] Plaintiff avers that the condition placed upon the accommodation was an attempt by Defendants to discourage Plaintiff's use of the accommodation. (Doc. 15, ¶ 47.)

FMLA rights and responsibilities following her request for FMLA leave. (*See id.*, ¶¶ 51-53.)

Shortly after being granted the foregoing accommodations, Defendants began to "illegitimately, intentionally, systematically[,] and maliciously scrutinize... Plaintiff regarding her classroom protocols and teaching methods," and disciplined Plaintiff for "perceived performance deficiencies." (*Id.*, ¶ 62.) As alleged in Plaintiff's amended complaint, this discipline was imposed in response to "minor infractions" such as typographical errors. (*Id.*, ¶ 63.) Furthermore, Defendants would discriminate against Plaintiff by subjecting her to near daily performance observations, imposing upon her excessive paperwork, and unduly monitoring her movements in the building and classroom. (*Id.*)

Plaintiff's attorney once again demanded Defendant School District grant Plaintiff's request for FMLA protections. (*Id.*, ¶ 58.) In March, 2012, Plaintiff was granted "intermittent FMLA leave."[8] (*Id.*) Although Plaintiff received this benefit, Defendants continued to conduct performance reviews and criticize Plaintiff. (*Id.*, ¶ 67.)

In the morning of April 26, 2012, Plaintiff experienced a flare up of her Chron's disease, and was unable to exercise her Early Morning Accommodation

---

[8] Plaintiff calculates that she was granted FMLA leave "almost (4) four months after the second 2011 request for FMLA and almost one (1) year after Plaintiff's first request." (Doc. 15, ¶ 58.) Plaintiff avers that the delay "interfered with Plaintiff[']s rights and the Plaintiff was prejudiced because the interference caused the exacerbation of her health conditions resulting in higher dosage needs for medications and therapies, increased doctors' visits, the inability to utilize leave for late arrivals, absences[,] and late AESOP transmissions" which resulted in discipline and suspensions without pay. (*Id.*, ¶ 59.) Plaintiff concludes that the foregoing actions and inactions constitute adverse actions against Plaintiff. (*Id.*, ¶ 60.) Although the court need not accept Plaintiff's conclusions when addressing a motion to dismiss, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), Defendants' motion does not challenge the amended complaint on a basis that requires the court to address whether such actions or inactions constitute adverse actions against Plaintiff.

until 8:40 a.m., at which time she informed Defendant School District that she would be arriving later than the typical start time, and would be utilizing her intermittent FMLA leave. (*Id.*, ¶ 69.) When Plaintiff arrived at school, she was embarrassed by Defendant McClimans in connection with her utilization of the Early Morning Accommodation and intermittent FMLA leave (*Id.*, ¶ 70), and was suspended for two days without pay for the late notice (*Id.*, ¶ 73).

Plaintiff alleges that she received disparate treatment because of her disability and suffered retaliation in response to her attempts to receive accommodations for her disability and exercise her rights pursuant to the FMLA. Additionally, Plaintiff alleges that Defendants McClimans and Fisher acted improperly with her requests for accommodations and FMLA leave. Lastly, Plaintiff has been forced to endure differential treatment by third parties due to the dissemination of Plaintiff's private health records. (*See id.*, ¶¶ 74-75.)

### B. Procedural History

Plaintiff initiated this action by filing a complaint on May 10, 2012, which named five identified defendants as well as "john does," and asserted eleven counts. (Doc. 1.) Defendants filed a motion to dismiss on July 12, 2012. (Doc. 12.) On July 31, 2012, Plaintiff filed an amended complaint, which identified the three defendants referenced herein, and asserted seven counts.[9] (Doc. 15.) On August 14, 2012, Defendants filed a motion to dismiss the amended complaint. (Doc. 20.) In

---

[9] The seven counts asserted in the amended complaint are titled as follows: Count I: Agency – Respondeat Superior (Doc. 15, ¶¶ 78-86); Count II: Rehabilitation Act – Failure To Engage in the Interactive Process (*Id.*, ¶¶ 87-94); Count III: Rehabilitation Act – Failure To Accommodate (*Id.* ¶¶ 95-99); Count IV: Rehabilitation Act – Discrimination (*Id.*, ¶¶ 100-106); Count V: Rehabilitation Act - Retaliation (*Id.*, ¶¶ 107-113); Count VI: Family and Medical Leave Act Interference (*Id.*, ¶¶ 114-146); Count VII: Family and Medical Leave Act Retaliation (*Id.*, ¶¶ 147-159).

their brief in support, filed August 27, 2012 (Doc. 22), Defendants asserted that: (1) respondeat superior is not an independent cause of action, (2) Plaintiff failed to state a cognizable claim as to the Individual Defendants under the Rehabilitation Act, and (3) the Individual Defendants are entitled to qualified immunity for claims arising under the FMLA. On August 30, 2012, Plaintiff filed a response (Doc. 23), which addressed only the Individual Defendants' assertion of qualified immunity. Defendant filed a reply (Doc. 24) on September 13, 2012. Thus, both parties have fully briefed the issues, and the matter is ripe for disposition.

## II.        Legal Standard

Defendants' motion challenges Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When adjudicating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must view all the allegations and facts in the complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *See Reuben v. U.S. Airways, Inc.*, No. 12-2842, 2012 WL 4513236, * 1 (3d Cir. Oct. 3, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that district courts "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions").

The court may only consider the facts alleged in the complaint, any documents attached as exhibits, matters of public record, and matters about which the court may take judicial notice. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Ultimately, the court must determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "plausibility standard" requires "more than a sheer possibility" that a defendant is liable for the alleged misconduct. *Reuben*, No. 12-2842, 2012 WL 4513236 at * 1 (citing *Iqbal*, 556 U.S. at 678). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Steedley v. McBride*, 446 F. App'x 424, 425 (3d Cir. 2011) (citing *Fowler*, 578 F.3d at 211). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In *Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010), the Third Circuit applied the principles of *Iqbal* and *Twombly* and set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss. 629 F.3d at 130. Under the test set forth in *Santiago*, the district court must initially "take note of the elements a plaintiff must plead to state a claim." *Id.* at 130. Next, the court

should identify allegations that "are no more than conclusions" and thus, "not entitled to the assumption of truth." *Id.* Lastly, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

### III.        Discussion

Plaintiff's complaint purports to state a cause of action for discrimination because of her disability and denial of reasonable accommodations in violation of the Rehabilitation Act (Counts III, IV), retaliation because of her disability in violation of the Rehabilitation Act and FMLA (Counts V, VII), and interference with rights granted to her and protected by the Rehabilitation Act and FMLA (Counts II, VI). Plaintiff further alleges that Defendant School District is directly liable, or otherwise liable through respondeat superior, for the acts or omissions of the Individual Defendants (Counts I, II-VII). Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that (1) Count I fails to state a cognizable claim for respondeat superior against any defendant; (2) the claims arising from violations of the Rehabilitation Act (Counts II-V) must be dismissed as to the Individual Defendants because the Act is inapplicable to those who do not directly receive federal funds; and (3) the claims arising from violations of the FMLA should be dismissed as to the Individual Defendants on the basis of qualified immunity. (*See* Doc. 20.) Plaintiff's response only argues that the Individual Defendants are not entitled to qualified immunity (Doc. 23 at 13), and apparently concedes that respondeat superior is not an independent cause of action and that the Rehabilitation Act is inapplicable to the Individual Defendants.

Nevertheless, the court will briefly address *in seriatim* the merits of all Defendants' arguments raised in support of dismissal.

## A. **Respondeat Superior As Independent Cause of Action**

The first count of Plaintiff's amended complaint must be dismissed to the extent it attempts to assert an independent cause of action for "respondeat superior." Respondeat superior is a "means of imputing liability to an employer for the actions of its agents, servants, or employees." *Care v. Reading Hosp. & Med. Ctr.*, No. 2003-CV-04121, 2004 WL 728532, *13 (E.D. Pa. Mar. 31, 2004). "Liability based on respondeat superior arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm." *Santiago*, 629 F.3d at 128 (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978)).

The instant complaint titles Count I "Agency – Respondeat Superior," and contends that Defendant School District is "vicariously liable for the unlawful actions of [Defendants Fisher and McClimans]." (*See* Doc. 15, at 18 of 36.) In Pennsylvania, there is no separate cause of action for respondeat superior liability. *See, e.g., Booker v. Nat'l R.R. Passenger Corp.*, No. 2012-CV-1528, 2012 WL 2953721, *9 (E.D. Pa. July 20, 2012) ("[T]here is no independent cause of action for respondeat superior under Pennsylvania law."); *Ford Motor Credit Co., LLC v. Maxwell*, No. 2010-CV-1926, 2012 WL 1677248, *2 (M.D. Pa. May 14, 2012). Recovery under this theory requires an agent's liability for an underlying claim which is imputed to its principal or employer. *Reading Hosp.*, 2004 WL 728532 at *13 ("Respondeat superior merely connotes a doctrine of imputation once an underlying theory of liability has been established. It is not a separate cause of

13

action") (quoting *Simcox v. Nat'l Rolling Mills, Inc.*, No. 1990-CV-1295, 1990 WL 74356, *3 (E.D. Pa. June 4, 1990)).

Accordingly, Defendants' motion to dismiss will be granted to the extent that Count I attempts to assert an independent cause of action for "respondeat superior."

### B.    Rehabilitation Act Claim Against Individual Defendants

As noted by Defendants, Plaintiff's complaint does not differentiate between claims asserted against solely Defendant School District and claims asserted against Defendant School District and Defendants McClimans and Fisher. (Doc. 22, p. 7 n.1.)  Without any indication to the contrary, the court must assume Plaintiff intended to assert each cause of action against each Defendant.  For the following reasons, any Rehabilitation Act claims against the Individual Defendants will be dismissed.

Four of Plaintiff's seven counts assert claims arising out of alleged violations of the Rehabilitation Act.  Specifically, Plaintiff asserts that Defendants interfered with, or otherwise failed to engage in, the interactive process regarding reasonable accommodations, failed to grant her reasonable accommodations, discriminated against and harassed her due to her disability, and retaliated against her because of her disability and her attempts to exercise her rights under the Rehabilitation Act.  In their motion to dismiss, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted under the Rehabilitation Act as to the Individual Defendants, because the Individual Defendants are not entities subject to liability for violations of Rehabilitation Act.

The Rehabilitation Act of 1973 prohibits discrimination on the basis of disability in programs receiving federal financial assistance. Section 504 provides, in relevant part, that:

(a)     No otherwise qualified individual with a disability in the United States, as defined in [29 U.S.C. § 705(20)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). The statute defines the term "program or activity" as follows:

(b)     "Program or activity defined." For purposes of this section, the term "program or activity" means all of the operations of - -
(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;
(2)(A) a college, university, or other postsecondary institution, or a public system of higher education; or
(B) a local educational agency (as defined in section 7801 of Title 20), system of vocational education, or other school system;
(3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship-
(i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
(ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or
(B) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or

> (4) any other entity which is established by two or more of the entities described in paragraph (1), (2), or (3);
> *any part of which is extended federal financial assistance.*

29 U.S.C. § 794(b) (emphasis supplied). Thus, the law only applies to programs or entities which receive federal funds. *See U.S. Dept. of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986); *see also Koslow v. Commw. of Pa.*, 302 F.3d 161, 171 (3d Cir. 2002) ("[I]f a state accepts federal funds for a specific department or agency, it voluntarily waives sovereign immunity for Rehabilitation Act claims against the department or agency - but only against that department or agency"). Acceptance of such funds obligates an entity to comply with the requirements of the Rehabilitation Act and exposes the entity to liability for violating the Act. *Paralyzed Veterans*, 477 U.S. at 605.

A plaintiff asserting a claim for the violation of Section 504 of the Rehabilitation Act must show that: (1) he or she is an individual with a disability; (2) he or she is otherwise qualified for participation in the program or activity, or for the potion sought; (3) he or she was excluded from the position sought, denied the benefits of, or subject to discrimination under the program or activity "solely by reason of his [or her] disability"; and (4) the relevant program or activity receives federal financial assistance. *See North v. Widener Univ.*, No. 2011-CV-6006, 2012 WL 1122571, *4 (E.D. Pa. Apr. 4, 2012) (citing *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1009 (3d Cir. 1995)). Defendants argue as their sole basis for seeking the dismissal of Counts II, III, IV, and V that individuals who do not directly receive federal financial assistance cannot be held liable for violations of the Rehabilitation Act.

As stated, a plaintiff asserting a claim for the violation of Section 504 of the Rehabilitation Act must establish that the entity in question receives federal financial assistance. *Taylor v. Altoona Area Sch. Dist.*, 513 F. Supp. 2d 540, 558 (W.D. Pa. 2007) (citing *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002)) ("Section 504 applies to federal financial assistance *recipients*." (emphasis supplied)). Congress limited coverage to those actually receiving federal financial assistance "because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." *Paralyzed Veterans*, 477 U.S. at 605.

Thus, liability under the Rehabilitation Act is limited to the entity who directly receives the federal funds. The Rehabilitation Act does not apply to those individuals who merely derive an indirect benefit from the aid or receive compensation from an entity that directly receives the aid. *See id.* at 604-07 (holding that Section 504 of the Rehabilitation Act did not apply to airlines because airlines were beneficiaries but not recipients of federal financial assistance given to airport operators). An indirect beneficiary, such as an employee of an entity who receives federal funds, does not himself "receive" federal financial assistance and is, therefore, not subject to liability under the Act. *Taylor*, 513 F. Supp. 2d at 558 (interpreting the Rehabilitation Act and concluding that "[t]his statutory language cannot reasonably be construed to include *individuals* [who do not directly receive federal financial assistance]" (emphasis in original)); *Emerson*, 296 F.3d at 190 ("It is undisputed that [the defendant college] is the recipient of federal financial assistance. Because the individual defendants do not receive federal aid, [the plaintiff] does not state a claim against them under the Rehabilitation Act").

In her amended complaint, Plaintiff avers that Defendant School District is the recipient of federal funds, and is, therefore, required to adhere to the dictates of the Rehabilitation Act. Specifically, Plaintiff asserts the following:

> Defendant School District is the recipient of Federal Funds through funded reading programs, special education and nutrition programs sponsored by, *inter alia*, the American Recovery and Reinvestment Act of 2009, other Federal Stimulus funds, and federal resources from which the Pennsylvania Department of Education advises the School District to use the money for additional nonrecurring expenses like purchasing equipment, teaching resources like books, and software.

(Doc. 15, ¶ 7.) In their motion to dismiss, Defendants do not challenge Plaintiff's assertion that Defendant School District receives federal funds. However, Plaintiff's amended complaint does not allege that either Defendant McClimans or Defendant Fisher received federal funds. Absent specific allegations to the contrary, the court must assume that, as employees who merely were paid a wage or salary by Defendant School District, the Individual Defendants were never direct recipients of federal funds. Therefore, as to the Individual Defendants, the amended complaint fails to state a claim for a Rehabilitation Act violation. Accordingly, Defendants' motion to dismiss the claims arising from violations of the Rehabilitation Act against Defendants McClimans and Fisher will be granted.

## C.    Individual Defendants' Qualified Immunity

Plaintiff's amended complaint raises both an interference and a retaliation claim pursuant to the FMLA. Plaintiff asserts these FMLA claims against both Defendant School District and the Individual Defendants in their individual capacities. Defendants seek to dismiss Plaintiff's FMLA claims against the Individual Defendants solely on the basis of qualified immunity. Resolution of this

issue hinges on whether Plaintiff's rights allegedly violated were clearly established in 2011.[10]

## 1. Qualified Immunity Standard

A defendant may raise the issue of qualified immunity on a motion to dismiss where the defense is "based on facts appearing on the face of the complaint." *Mims v. City of Phila.*, No. 2009-CV-4288, 2010 WL 2077140, *13 n. 14 (E.D. Pa. May 19, 2010) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). It is well-settled that "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schneyder v. Smith*, 653 F.3d 313, 318 (3d Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

In *Saucier v. Katz*, the Supreme Court explained the analytical process for determining when the privilege of qualified immunity has been overcome:

> A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

---

[10] Defendants' reply brief states "Defendants agree that the type of conduct alleged by Plaintiff, had it actually occurred, could violate clearly established FMLA authority . . . [and] statutory rights not in dispute." (Doc. 24, p. 5.) Read in the light most favorable to Plaintiff, the court construes this statement as concessions that: (1) the complaint sufficiently alleges a FMLA violation; and (2) the Plaintiff's rights under the FMLA were clearly established. Notwithstanding these apparent concessions, the court will nevertheless address Defendants' qualified argument in greater detail below.

533 U.S. 194, 201 (2001) (citations omitted). Although the Supreme Court announced that *Saucier's* two-step protocol is not mandatory, courts have the discretion to decide whether that procedure is worthwhile in particular cases. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

For a right to be clearly established, its "contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations omitted). The Third Circuit has explained a clearly established right as follows:

> [D]efendants are entitled to qualified immunity if "reasonable officials in [their] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." Even where officials "clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles."

*Larsen v. Senate of Commw. of Pa.*, 154 F.3d 82, 87 (3d Cir. 1998) (citations omitted).

The assessment of qualified immunity is based on an "objective legal reasonableness" standard; although the facts known to the official are relevant, the official's motivation in acting on those facts is not. *Baylock v. City of Phila.*, 504 F.3d 405, 411 (3d Cir. 2007). The court must first ask whether the facts of the case, when "[t]aken in the light most favorable" to the plaintiff, show the violation of a constitutional or statutory right for which the plaintiff has a remedy. *Saucier*, 553 U.S. at 201. To decide whether those rights were clearly established, the court must determine whether "it would . . . have been clear to a reasonable [official] what the law required under the facts alleged." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir.

2004). A plaintiff need not show a case directly on point, but may meet the burden by referencing closely analogous case law which demonstrates that the allegedly violated constitutional or statutory right was clearly established when the alleged violation took place. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 n. 4 (3d Cir. 2001) (stating that courts may look beyond binding precedent to determine the state of the law at the time of the official's decision); *People of Three Mile Island Through Three Mile Island Alert, Inc. v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144 (3d Cir. 1984). Although they "cannot establish the law of the circuit," district court decisions from within the Third Circuit may also be relevant, *Williams v. Bitner*, 455 F.3d 186, 193 n. 7 (3d Cir. 2006), and "do play a role in the qualified immunity analysis." *Doe v. Delie*, 257 F.3d 309, 321 n. 10 (3d Cir. 2001) (citing *Pro v. Donatucci*, 81 F.3d 1283, 1292 (1996)). The court will address whether Plaintiff has shown that her statutory rights under the FMLA were violated by Defendants, and will then address whether those rights were clearly established at the time of the violation.

## 2. Violation of Statutory Rights

In their motion, the Individual Defendants concede that the conduct alleged, if proven, could show a violation of a statutory right. (*See* Doc. 24, at 5 ("Defendants agree that the type of conduct alleged by Plaintiff, had it actually occurred, could violate clearly established FMLA authority").) The FMLA contains two distinct claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with her substantive rights under the FMLA, *see* 29 U.S.C. § 2615(a)(1); and (2) retaliation claims, in which an employee asserts that her employer discriminated against her because she engaged in activity

protected by the FMLA, *see* 29 U.S.C. § 2615(a)(1) & (2). Plaintiff's amended complaint asserts a claim under each provision.

### a. Interference Claim

The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). The FMLA provides that, among those rights protected, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" if the employee has "a serious health condition that makes [her] unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). Leave may be taken intermittently if medically necessary. 29 U.S.C. § 2612(b)(1).

Interference with an eligible employee's attempt to exercise a right protected by the FMLA includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). Employers may not penalize for, or deter an employee from, exercising her FMLA rights. 29 U.S.C. § 2615(a)(1). Where a plaintiff alleges that an employer has interfered with her rights under the FMLA, "the employee only needs to show that [she] was entitled to benefits under the FMLA and that [she] was denied them." *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006). Courts have interpreted the pleading standard for an interference claim to require a plaintiff to show: (1) she is an eligible employee under the FMLA; (2) defendant is an employer subject to the requirements of the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) the defendant denied her the benefits to which she was entitled under the

FMLA." *Parker v. Hanhemann Univ. Hosp.*, 234 F. Supp. 2d 478, 483 (D.N.J. Dec. 18, 2002). To satisfy the notice requirement, "[a]n employee need not specifically mention the FMLA or assert rights under it . . . but [rather] only state that leave is needed." *Reinhold v. Cnty. of York, Pa.*, No. 2011-CV-605, 2012 WL 4104793, *12 (M.D. Pa. Aug. 31, 2012) (citing 29 C.F.R. § 825.302(c); *Wilson v. Lemington Home for the Aged*, 159 F. Supp. 2d 186, 192 (W.D. Pa. 2001)).

In her amended complaint, Plaintiff alleges that she suffered from Chron's disease, a serious medical condition that makes her unable to perform some of the functions of her position as a teacher since 2008, but that Defendants did not afford her the opportunity to fully utilize her FMLA leave, despite her providing Defendants notice of her intention to take FMLA leave in 2011. She further alleges that Defendants failed to notify her of her rights under the FMLA. The amended complaint avers both that Plaintiff was entitled to FMLA leave and that, despite providing Defendants notice of her request for leave, they: (1) failed to give her proper notice of her eligibility for leave; (2) placed unreasonable restrictions on her utilization of leave; (3) discouraged her from utilizing FMLA leave by imposing discipline on her; (4) publicly disclosed to coworkers the occasions when she utilized her intermittent FMLA leave; and (5) failed to properly communicate with her as to the status of her FMLA requests. These allegations, taken as true for the purposes of the motion to dismiss, are sufficient to state a claim for interference under the FMLA, and establish that Plaintiff's statutory rights were violated.

### b. Retaliation Claims

To establish a prima facie case for retaliation under the FMLA, a plaintiff must show that: (1) she invoked her right to FMLA-qualifying leave; (2)

she suffered an adverse employment decision; and (3) the adverse decision was causally related to her invocation of rights. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009) (modifying *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)).

The court determines that Plaintiff has established a prima facie retaliation case under the FMLA. Specifically, Plaintiff has shown that: (1) she was an eligible employee under the FMLA; (2) she engaged in the protected activity of requesting FMLA leave; (3) she was subjected to discipline in close temporal proximity to her request; (4) she was treated differently by Defendants due to her invocation of FMLA leave; and (5) she was suspended for utilizing intermittent FMLA accommodations which was previously granted to her. These allegations, taken as true for the purposes of the motion to dismiss, are sufficient to state a claim for retaliation under the FMLA, and establish that Plaintiff's statutory rights were violated.

### 3.  Clearly Established Rights

As stated above, the Individual Defendants concede that the conduct alleged, if proven, could show a violation of a clearly established right. (*See* Doc. 24, at 5 ("Defendants agree that the type of conduct alleged by Plaintiff, had it actually occurred, could violate clearly established FMLA authority").) However, the Individual Defendants argue that "Plaintiff's 'statutory right' to hold [Defendants] Fisher and McClimans individually liable as public officials" was not clearly established at the time of the alleged violations. (*Id.*) In support of their argument, Defendants rely on a recent Third Circuit decision, *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012), which cites

a Fifth Circuit Court of Appeals decision, *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006). In *Modica*, the Court of Appeals for the Fifth Circuit held that, although the FMLA does provide for individual liability, the individual defendant was entitled to qualified immunity because "it was not clearly established that public employees are subject to individual liability under the FMLA when [the defendant] terminated [the plaintiff]'s employment." *Modica*, 465 F.3d at 188. Contrary to Defendants' contentions, *Haybarger* does not stand for the same proposition. The Third Circuit's few references to *Modica* are made in support of the court's reasoning that the FMLA does permit individual liability. *See Haybarger*, 667 F.3d at 414, 415, 416. Indeed, *Haybarger* simply confirms[11] that the FMLA provides for individual liability; it does not consider the issue of qualified immunity or whether a plaintiff's rights under the FMLA were clearly established. While this court acknowledges

---

[11] Although it was the first time the Third Circuit Court of Appeals had directly addressed the individual issue, the *Haybarger* decision was consistent with district courts within this circuit. *See Kilvitis v. Cnty. of Luzerne*, 52 F. Supp. 2d 403, 413 (M.D. Pa. 1999) (acknowledging individual liability under the FMLA); *see also, e.g., Conteh v. Francis E. Parker Mem. Home, Inc.*, No. 10-CV-5670, 2011 WL 1459657, *3 (D.N.J. Apr. 15, 2011) (permitting a claim under the FMLA against a defendant in her individual capacity); *Diehl v. Admin. Office of Pa. Courts*, No. 4:10-CV-71, 2010 WL 8939137, *9 (M.D. Pa. Sept. 13, 2010) (concluding that an individual defendant may be sued in his individual capacity under the FMLA); *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 480 (W.D. Pa. 2008) (permitting city manger to be sued, in an individual capacity, for alleged violations of city employee's rights under FMLA, and denying summary judgment on qualified immunity); *Lynch v. Robertson*, No. 3:05-CV-201, 2007 WL 2407276, *22 (W.D. Pa. Aug. 20, 2007) (acknowledging that district courts within the Third Circuit have held that individual liability exists under the FMLA); *Spagnoli v. Brown & Brown Metro, Inc.*, No. 06-CV-414, 2007 WL 2362602, *16 (D.N.J. Aug. 15, 2007) ("Thus, the plain language of the FMLA evinces an intent to provide for individual liability"); *Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814, 821 (D.N.J. 2006) (holding that individual employees in the public and private sectors can be liable for FMLA violations if they are acting on behalf of their employer); *Smith v. Genesis Ventures I, LLC*, No. 06-CV-1473, 2006 WL 3592330, *4 (E.D. Pa. Dec. 8, 2006) ("The Department of Labor's interpretation of the FMLA, along with a growing consensus among the courts that the FMLA permits individual liability, convince the Court that Smith's FMLA claims against [the individual defendants] should not be barred at this stage") (footnotes omitted).

that the Fifth Circuit's holding may support Defendants' argument, for the reasons articulated below, this court does not find *Modica* persuasive.

Defendants argue that the recency of the Third Circuit's decision in *Haybarger* demonstrates that there was uncertainty regarding whether individual government employees acting as supervisors are personally liable under the FMLA. Accordingly, they contend, Defendants Fisher and McClimans are entitled to qualified immunity. This argument is flawed, as it disregards the nature, and reflects a misunderstanding, of the doctrine of qualified immunity. Qualified immunity requires this court to consider whether Plaintiff's rights granted by the FMLA were violated (an issue apparently conceded by Defendants (Doc. 24, at 5)), and if so, whether *that right* (e.g., Plaintiff's right to intermittent leave for a serious health condition under the FMLA) was clearly established at the time of the alleged violation. Defendants' focus on the "uncertainty" of personal liability is misplaced, as exposure to personal liability is not an inquiry relevant to whether qualified immunity is available. This approach is in accord with the purpose of qualified immunity: to give public officials freedom to act so long as their actions do not violate a clearly established right. It would be a misuse of qualified immunity to apply the doctrine to insulate from suit public employees who, as is the case here, do not dispute that their acts (if proven) would violate a clearly established right, but instead only take exception to liability on the basis that responsibility for their conduct should be borne by their own employer alone.

Thus, the relevant inquiry is, having found violations of Plaintiff's rights under the FMLA, whether those rights were clearly established such that "it would have been clear to a reasonable school official of what the law required under

26

the facts" at the time of the officials' actions. *Kopec*, 361 F.3d at 776; *Bitner*, 455 F.3d at 190.

      The court concludes that, based on the plain language of the statute, the rights allegedly violated were clearly established during the relevant time period.[12] The court's holding is consistent with case law within this circuit. In *Hayduk v. City of Johnstown*, the United States District Court for the Western District of Pennsylvania addressed whether a plaintiff's FMLA rights were clearly established in the context of qualified immunity. 580 F. Supp. 2d at 480. Holding that the plaintiff's FMLA rights, including the right to take medically necessary leave, were clearly established in 2006, the district court focused on the statutory language of the FMLA, the regulations applicable thereto, as well as case law addressing the issue. In support of its holding, the *Hayduk* Court relied in part on *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), and reasoned as follows:

> On March 19, 2002, the Supreme Court held that the FMLA required that leave be granted, "when 'medically necessary,' on an intermittent or part-time basis"; that "[t]he regulations make it the employer's responsibility to tell the employee that an absence will be considered FMLA leave"; and that "[e]mployers must give written notice of the designation, along with detailed information concerning the employee's rights and responsibilities under the Act, 'within a reasonable time after notice of the need for leave is given by the employee-within one or two business days if feasible.'"

*Hayduk*, 580 F. Supp. 2d at 478-79 (citing *Ragsdale*, 535 U.S. at 86-87). When viewed in the light most favorable to Plaintiff, the amended complaint establishes that the Individual Defendants had notice that Plaintiff needed FMLA leave.

---

[12] The rights at issue in this case were established by the plain language of the FMLA, which was enacted in 1993.

Specifically, Plaintiff alleges that Defendants had a record of her serious health condition since 2008 (Doc. 15, ¶10), and that she requested FMLA leave in March, 2011 (*Id.*, ¶ 14). Based on the amended complaint, and given the state of the law in this area, the court concludes that Defendant Fisher, as the Director of Human Resources, and Defendant McClimans, as the principal of Clearview Elementary School, would have known what the law required. Thus, during the relevant time, it was clearly established that Defendants were required to communicate with Plaintiff about her rights, and to grant Plaintiff FMLA leave if medically necessary. Whether it was clearly established that Defendants Fisher and McClimans could be sued in their individual capacity under the FMLA is a different inquiry and irrelevant to the issue of qualified immunity.[13]

In short, the FMLA clearly prohibits the type of conduct that Plaintiff alleges the Individual Defendants engaged. Further, the court finds that Plaintiff's rights under the FMLA were clearly established at the time of the alleged violations. Whether it was clear that Defendants Fisher or McClimans could be held individually liable for their violations of the FMLA is of no consequence to whether Plaintiff clearly enjoyed the statutory protections set forth in the FMLA. Accordingly, Defendants Fisher and McClimans are not entitled to qualified immunity on the FMLA claims.

---

[13] Although irrelevant, the court notes that individual liability for violations of the FMLA has been permitted for over a decade. *See supra* text accompanying note 11.

## IV.  Conclusion

Respondeat superior is a means of imputing liability to an employer for the actions of its agents or employees and cannot be asserted as an independent cause of action against any Defendant named herein. The amended complaint fails to allege that either Defendant Fisher or McClimans were direct recipients of federal financial assistance, and therefore, fails to state a cognizable cause of action against either Individual Defendant for violations of the Rehabilitation Act. The relevant inquiry in addressing the issue of qualified immunity is whether the Individual Defendants violated Plaintiff's clearly established statutory or constitutional rights. As Plaintiff's amended complaint does show that her statutory rights secured by the FMLA were violated by the Individual Defendants and that those rights were clearly established at the time of the alleged violations, the Individual Defendants are not entitled to qualified immunity.

An appropriate order will issue.


SYLVIA H. RAMBO
United States District Judge

Dated: November 30, 2012.